UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BERNITA STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 1:06-CV-215 |
| | ) |
| GENERAL ELECTRIC | ) |
| CONSUMER & INDUSTRIAL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, General Electric Consumer & Industrial ("GE") on August 1, 2007.[1] The plaintiff, Bernita Stevens ("Stevens") filed a response in opposition to the motion on October 31, 2007, and GE filed a reply brief on November 15, 2007. For the reasons set forth herein, the motion for summary judgment is GRANTED.

---

[1] The parties to this case entered into an agreement regarding the submission of certain proprietary information. They submitted a proposed Stipulated Protective Order, which was approved and made an Order of the court on June 22, 2007. *See* Docket at 42. Pursuant to that agreed order, GE submitted its memorandum in support of its motion for summary judgment under seal. While it appears to the court that there is little in the memorandum that might be worthy of a protective order, it does contain the names of certain current and former GE employees and some arguably confidential information about them (such as job performance evaluations). For that reason, the brief shall remain under seal and in the custody of the District Clerk's office. In this Order, the court will not use the names of the GE employees or former employees referenced in the defendant's brief or discuss the confidential information contained therein, except in general terms for the purpose of elucidating the court's ruling. (Neither the plaintiff's response brief nor the defendant's reply brief were submitted under seal.)

**BACKGROUND**

Bernita Stevens was a long-time employee of GE.  Complaint, Docket at 1, p. 3.[2]  She began working for GE in 1979 and worked there until January of 1990.  In 1997, she was rehired by GE and worked for the company until she was terminated in 2005.  *Id*.  On September 28, 2005, she was informed that her job was being eliminated.  *Id*.  GE maintains that Stevens was the victim of a necessary reduction in force ("RIF").  Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Brief"), Docket at 43, p. 2.  Stevens argues that GE's proffered reason for her termination is pretextual and that she was fired because of her age (56 at the time) and her gender.  Complaint, p. 3.  Stevens asserts that a younger male employee and another male employee (albeit one who was about the same age as Stevens) were assigned some of Stevens's former job duties following the RIF, and that this is evidence of age and sex discrimination.  Plaintiff's Brief in Support of her Motion in Opposition for Summary Judgment [sic] ("Plaintiff's Brief"), Docket at 65, pp. 5-6.  Stevens claims that she was terminated in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.  GE maintains that "[d]ue to significant financial issues, GE conducted a legitimate, nondiscriminatory reduction in force . . . in September 2005 in which it eliminated four of the eleven CSS employees in the OEM area.[3]  Plaintiff was one of the CSS employees terminated during the RIF."  Defendant's Motion for Summary Judgment, Docket at 44, p. 1.  By way of its present motion, GE seeks summary judgment in its favor on both of Stevens's claims.

---

[2] When she filed her Complaint, Stevens was proceeding *pro se*.  She later filed a motion for appointment of counsel, which was granted.  *See* Docket at 33.

[3] "CSS" is an acronym for Customer Service Specialist and "OEM" is an acronym for Original Equipment Manufacturer.  Defendant's Motion for Summary Judgment, p. 1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,*

477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).  A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  *Celotex,* 477 U.S. at 325.  A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available.  *Senner v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996).  To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination.  However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

## DISCUSSION

Under Title VII, employers may not discriminate "against any individual with respect to [his] compensation, terms, condition, or privileges of employment, because of such individual's

4

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the well-established burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in order to survive summary judgment Stevens initially would have to show: (1) she was a member of a protected class; (2) she was meeting GE's legitimate job expectations; (3) she was subjected to a materially adverse employment action; and (4) others outside the protected class were more favorably treated. *Id.,* 411 U.S. at 802, 93 S.Ct. 1817. If Stevens could establish such a *prima facie* showing, GE would then have to articulate a legitimate, nondiscriminatory explanation for Stevens's termination which Stevens then would have the opportunity to prove to be pretextual. *Luks,* 467 F.3d at 1055; *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006).

With regard to Stevens's age discrimination claim, the standard is virtually the same. The court analyzes Stevens's claims under the indirect method of proof, see *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which requires Stevens to show that (1) she was more than 40; (2) she met GE's legitimate job expectations; (3) she was discharged; and (4) she was treated differently from a similarly-situated substantially younger employee. *See Olson v. Northern FS, Inc.,* 387 F.3d 632, 635-36 (7th Cir. 2004); *Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1090 (7th Cir. 2000).[4]

---

[4] A plaintiff may attempt to prove discrimination (be it sex discrimination, age discrimination, or any other form) by presenting either direct or indirect evidence to support her claims. Direct evidence is "evidence which if believed by the trier of fact, will prove discriminatory conduct on the part of the employer without reliance upon inference or presumption." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon [discriminatory] animus." *Id*. Not surprisingly, "direct evidence" discrimination cases are few and far between. Most plaintiffs, like Stevens in this case, rely on the "burden-shifting" method set forth in *McDonnell-Douglas* and its progeny in order to establish their *prima facie* cases of

5

In this case, both the sex discrimination claim and the age discrimination claim will be discussed in tandem, since Stevens fails to establish a *prima facie* case on either claim for the same reasons. For the reasons discussed below, she fails to establish the fourth prong of a *prima facie* case of sex or age discrimination.[5] This is the basis on which GE seeks summary judgment. *See* Defendant's Brief, p. 7 ("Stevens cannot meet the fourth prong of her *prima facie* burden as to either of her claims."); Defendant's Reply in Support of its Motion for Summary Judgment ("Defendant's Reply"), Docket at 68, p. 4 ("Stevens is unable to satisfy the fourth prong of her prima facie case as to either her gender or her age claim.").

Stevens does not contest the fact that GE experienced financial difficulties or that the company chose to implement a RIF. Rather, she appears essentially to argue that GE used that RIF as a pretext or "cover" to terminate her because she was female and because she was over 40. *See generally*, Plaintiff's Brief. In support of her position, Stevens alleges that after she fell victim to the RIF, "her job duties were absorbed by employees who were (1) male, or (2) substantially younger." *Id*., p. 5 (citing Plaintiff's Exhibit 1, Affidavit of Bernita Stevens, ¶ 11). Stevens admits in her brief that her "duties were absorbed by both male and female employees. . . . Stevens was one of many CSS employees in the OEM area of GE's motors operation. Thus, not all of the employees that absorbed Stevens' duties are not within her protected class." *Id*. This grammatically confusing sentence appears to be an attempt by Stevens to argue that because

---

discrimination. Stevens concedes that she does not have direct evidence of discrimination. Plaintiff's Brief, Docket at 65, p. 4.

[5] GE does not challenge the fact that Stevens is in a protected class under Title VII (female), that she is over 40 years of age for purposes of the ADEA, or that she suffered an adverse employment action.

6

certain male employees assumed some of her duties following her termination, she succeeds in establishing the fourth prong of her *prima facie* sex discrimination claim.  Similarly, Stevens asserts that "her job duties were absorbed by a CSS employee who was substantially younger." *Id*., p. 6 (citing Affidavit of Bernita Stevens, ¶ 2).  Thus, according to Stevens, two of the GE employees who absorbed some of her former duties were males, and one of them was under 40 years of age.  *Id.*, ¶¶ 4, 5 and 6.[6]

When deciding which employees to terminate as a result of the RIF, GE claims that it "evaluat[ed] the employees in 17 different job related areas and then tallying the scores.  The employees with the lower scores were let go while those with the higher scores were retained. Defendant's Motion for Summary Judgment, p. 1.  GE maintains that Stevens job performance evaluation resulted in a lower "score" than most other employees in her assigned area and, therefore, she fell victim to the RIF.  GE also points out that "all of the employees in the OEM area both before and after the RIF were female, several employees under 40 were let go, while several employees over 40 (and a few over 50) were retained, and the relevant decision-makers were both female and over 40." *Id*., p. 2.

In addition to this important, revealing statistical information, which Stevens does not dispute, GE argues that Stevens fails to meet her burden of proof on the fourth prong of her claims for other reasons also.  For example, GE points out that Stevens included, as part of her affidavit, a list of employees whom she claims were assigned some of her former duties.

---

[6] Specifically, Stevens mentions two employees by name.  One was a male under age 40 and the other a male over age 50.   Stevens also states that both men are white, although this is irrelevant since Stevens is not alleging a race discrimination claim.  (Stevens is African-American.  *See* Affidavit of Bernita Stevens, Plaintiff's Exhibit 1, ¶ 1.)

7

Defendant's Reply, p. 5 (citing Stevens Affidavit, ¶ 11 and Exhibit 1 thereto).  As GE points out, the list contains the names of only female employees.  Therefore, argues GE, "[t]his represents the end of Stevens' gender discrimination claim."  *Id.*  Also, GE argues that the assertions in Stevens's affidavit "provide no insight into how she became aware of GE's internal staffing decisions after the end of her employment.  Based on Stevens' submission, there is no way to conclude that she has personal knowledge of these 'facts' and thus her assertions must be disregarded."  *Id.* (citing *United States v. Global Distribs.*, 498 F.3d 613, 619 (7th Cir. 2007) ("affidavit not based upon personal knowledge was insufficient to defeat summary judgment"); *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) ("the record may include a so-called 'self-serving' affidavit provided it is based on personal knowledge"); and *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("self-serving statements in affidavit without factual support in the record carry no weight on summary judgment").  GE is correct that Stevens does not provide any evidence that the assertions made in her affidavit are based on personal knowledge.  (In fact, although it is a technical point that GE does not raise, Stevens's affidavit does not even state that the facts recited in it are based on her personal knowledge.)  Stevens also fails to present any evidence to corroborate or support her assertions, such as discovery materials provided to her by GE.  Rather, Stevens simply presents this "list," which she readily admits she compiled herself (*see* Stevens Affidavit, ¶ 11), and designates it as "evidence."     Finally, GE notes that three of the individuals named on Stevens's list of employees who allegedly assumed her duties "are over the age of fifty."  *Id.*, p. 6.  GE asserts that "[i]n order for Stevens to meet the fourth prong of her prima facie case, she must show that those who assumed her duties were under 40 or over 40, but substantially younger than her."  *Id.* (emphasis in original).  GE states

8

that "[u]nder controlling law, half of the identified individuals are within Stevens' protected class." *Id*. This obviously undermines Stevens's allegation that she was terminated because she was over age 40.[7]

There is another reason why GE's motion must be granted. As GE contends, even if the court were to assume, for the sake of argument only, that Stevens met her burden of establishing *prima facie* claims of sex and age discrimination, she fails to present evidence that GE's proffered nondiscriminatory reason for terminating her was pretextual. In addition to the arguments Stevens raises that have already been dispensed with above, she makes a couple additional cursory arguments in an attempt to raise a fact issue as to pretext, but they are to no avail. For example, she argues that her deficiencies in certain computer technology areas were the result of a lack of training. Plaintiff's Brief, Affidavit of Bernita Stevens, ¶ 8. In other words, Stevens impliedly blames GE for her lack of proficiency with certain computer programs. But this argument ignores the undisputed fact that the company offered both mandatory and optional computer training programs, and Stevens did not avail herself of any optional training. Also, Stevens claims that she "was never warned that my skill or lack thereof as it related to [computer programs] would be grounds for my termination." *Id.*, ¶ 9. But her admitted deficiencies were *not* the grounds for her termination. Rather, they were simply one of many factors considered when she, along with her similarly situated coworkers, were evaluated and "ranked" to determine who would be terminated as a result of the RIF. These arguments fail, however, to refute GE's explanation of its decision to terminate Stevens, or to raise a genuine

---

[7] Stevens even admits that several of the "employees who were retained in the OEM area were also over 50 years old." Plaintiff's Brief, p. 6.

9

issue of fact as to discriminatory intent.[8]

The circumstances that led up to the RIF began in December 2004, when GE sold a portion of its motors business to another company. Defendant's Brief, p. 1. Following that sale, GE embarked on a restructuring of "its remaining motors business with the objective of streamlining operations and increasing profitability. . . . The restructuring affected the entire motors operation, including the Original Equipment Manufacturer . . . area." *Id*. As part of this restructuring, GE decided "to reduce the total number of [CSS] employees." *Id*., p. 2. According to the company, "[a]ll incumbent CSS employees, including those in the OEM area, became candidates for job elimination." *Id*. As stated above, in order to determine which employees to terminate, GE implemented a review process by which all employees were rated in various aspects of job performance, each was "assigned . . . a numerical rating (between 1 and 5) in seventeen different job-related areas. . . . These ratings were then entered into a spreadsheet and tallied. . . . On September 28, 2005, GE implemented the reduction in force . . . . CSS employees with the higher overall ratings were retained. . . . Those with the lower overall ratings were let go." *Id*., p. 2 (citing Exhibit 1, Affidavit of Koreen Drum).[9]

---

[8] These arguments by Stevens might have some relevancy if she was raising them to support an argument that she was performing her job to the reasonable satisfaction of her employer (i.e., to establish the second prong of her *prima facie* case). But this is not an issue, since GE makes no argument that Stevens was failing to perform her job in an acceptable manner. Instead, GE cites issues with Stevens's job performance only to explain how those issues factored into the evaluations done for each CSS employee and the subsequent decision concerning which employees to terminate as a result of the RIF.

[9] Ms. Drum was GE's Commercial Operations Manager for Customer Service at the time of the RIF. Ms. Drum, along with Linda Eckert, GE's Manager of Commercial Operations, conducted the employee evaluation/ranking process to determine which employees would be terminated.

All eleven of the CSS employees in the OEM area as of September 28, 2005, are listed in a chart in GE's brief. *Id*., p. 3.[10] This chart indicates, as GE states, that all these employees were female. *Id*. In addition, of the four employees who were terminated, two were under 40 years of age and two (including Stevens) were over 50. *Id*. GE also points out that "[o]f the seven employees retained, four were over the age of forty; three of those were over the age of fifty. . . . Finally, the decision-makers–Eckert and Drum–are both female and were over the age of forty." *Id*.

When compiling the employee evaluations and assigning each employee her "score," GE explains that "Stevens' total score was brought down by low scores in the area of 'customer relationships,' and several computer-related areas, including proficiency with the computer program Excel." *Id*., pp. 3-4 (citing Drum Affidavit, ¶¶ 22, 23 and 24). GE argues that "[d]uring her deposition, Stevens openly acknowledged deficiencies in the areas in which she received low scores." *Id*. This included admitting "that GE had received customer complaints about her customer services on more than one occasion[.]" and acknowledging that she had weaknesses in her computer skills. *Id*., p. 4 (citing Exhibit 2, Deposition of Bernita Stevens, p. 34. In addition, GE points out that even though the company offered both mandatory and optional computer training programs, Stevens admitted that she only attended the mandatory programs and did not take advantage of the optional programs in an effort to improve her skills. *Id*. (citing Stevens Deposition, pp. 17, 19, 29, and 53). GE also points out that "in the years leading up to her

---

[10] Unlike the list compiled and submitted by Stevens, the list submitted by GE is based on the personal knowledge of GE's affiant, Koreen Drum, the company's Commercial Operations Manager for Customer Service at the time of the RIF. In any event, Stevens does not challenge the authenticity or accuracy of this list.

11

inclusion in the RIF, Stevens received . . . performance appraisals" indicating that she had difficulties with her computer skills.  *Id*. (referencing Exhibit D to Stevens Deposition ("Manager Assessment" forms)).  According to GE, "[w]hen the numerical rankings were tallied, Stevens' score was among the lowest in the OEM area, causing her to be included in the RIF."  *Id*., p. 3.  GE argues that "Stevens was included in the RIF based on the undisputed fact that she struggled in the areas of computing and customer service.  There is absolutely no evidence to the contrary."  *Id*., p. 5.

GE is correct that Stevens presents no evidence whatever to establish that the RIF implemented by GE was a pretext for discrimination (or even evidence that raises a genuine issue of fact on the matter).  All that Stevens presents to the court are her own presumptive and self-serving statements and conclusions.  Thus, as GE argues, even if Stevens could be said to have established a *prima facie* case of gender or age discrimination, her case still fails since she presents no evidence at all that GE's proffered, nondiscriminatory reason for terminating her was pretextual.

## CONCLUSION

For the reasons discussed in this Order, the Motion for Summary Judgment filed by the defendant, General Electric Consumer & Industrial, is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of the defendant and against the plaintiff.

Date: February 19, 2008.

   /s/   William C. Lee
        William C. Lee, Judge
      United States District Court
      Northern District of Indiana